**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 12 2013, 8:05 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**AMY KAROZOS**
Greenwood, Indiana

ATTORNEYS FOR APPELLEE:

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

**PATRICK M. RHODES**
Indiana Department of Child Services
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF J.J., | ) ) ) ) | |
| M.J., (Mother) | ) ) | |
| Appellant-Respondent, | ) ) | |
| vs. | ) ) | No.  49A05-1211-JT-575 |
| THE INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) | |
| Appellee-Petitioner. | ) ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marilyn Moores, Judge
The Honorable Larry Bradley, Magistrate
Cause No. 49D09-1112-JT-46720

**July 12, 2013**

**ROBB, Chief Judge**

## Case Summary and Issues

M.J. ("Mother") appeals the juvenile court's order terminating her parental rights with respect to her son, J.J. For our review, she raises two issues, which we restate as: 1) whether sufficient evidence supported the involuntary termination of her parental rights, and 2) whether the notice she was provided complied with requirements of due process. Concluding the evidence was sufficient and Mother was not denied due process, we affirm.

## Facts and Procedural History

J.J. is deaf, has been diagnosed with cystic fibrosis, and has had other health issues. He was removed from Mother's care at the time of his birth in January of 2011 because both he and Mother tested positive for amphetamines. A few days later, the Indiana Department of Child Services in Marion County ("DCS") filed a petition, alleging J.J. was a child in need of services ("CHINS") because of substance abuse concerns and the lack of the parents' ability to provide J.J. with a safe home—at the time, their home lacked electricity and heat and they did not have the items necessary to care for J.J.[1] Mother admitted that J.J. was a CHINS. A parental participation order, or case plan, was developed and approved on March

---

[1] Both Mother and J.J.'s father were involved in the subsequent proceedings. However, Father is not a party to this appeal.

30, 2011. Due to a pending criminal matter, Mother was incarcerated from October to December of 2011. She was placed on work release from January to August of 2012.

DCS filed a petition to involuntarily terminate the parental rights of Mother with respect to J.J. on December 9, 2011. A two-day trial took place on the petition on September 25 and October 16, 2012. The trial court issued a detailed order granting DCS's petition, and concluding, in part, the following:

> 39. There is a reasonable probability that the conditions that resulted in [J.J.]'s removal and continued placement outside the home will not be remedied by his mother. [Mother] did not consistently participate in services prior to her incarceration and work release program. Although home based services were recently re-referred, [Mother] has begun to miss appointments as "no show, no call". She is also inconsistent in her deaf education meetings, visitation sessions and drug screens. It is concerning that [Mother] has not completed a full intensive drug education program with aftercare and support given her history of use, and that Methamphetamine appears to be a drug of choice, involving her in two ChINS [sic] cases. At the time of trial, prior to reunification [Mother] still needed to successfully complete home based therapy, follow through with recommendations of her psychological evaluation, undertake intensive substance abuse treatment and maintain consistent random screens. In addition, she would need to provide safe housing, fully educate herself regarding [J.J.]'s special needs and make a commitment to address his deafness.
> ***
> 41. Continuation of the parent-child relationship poses a threat to the well-being of [J.J.] Without successfully completing services to address issues and without becoming adequately educated on the special needs involved here, the parents cannot provide a stable, safe environment for [J.J.] in which he can reach his potential. It is especially important for [J.J.] that he obtain a permanent home as soon as possible to provide him an opportunity to have a Cochlear Implant.

Appellant's Appendix at 18. Mother now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

### I.     Sufficiency of Evidence

#### A.  Standard of Review

When reviewing the sufficiency of the evidence supporting a termination of parental rights where the juvenile court has entered findings of fact and conclusions thereon, we apply a two-tiered standard of review. In re G.Y., 904 N.E.2d 1257, 1260 (Ind. 2009). First, we determine whether the evidence supports the juvenile court's findings, and second, we determine whether the findings support the judgment. Id. In making this determination, we neither reweigh the evidence nor judge the credibility of witnesses, and we consider only the evidence and reasonable inferences most favorable to the judgment. Id. We will reverse a termination of parental rights only if the juvenile court's judgment is clearly erroneous. Id. A judgment is clearly erroneous if the findings do not support the juvenile court's conclusions or the conclusions do not support the judgment. Id.

#### B.     Termination of Parental Rights

The traditional right of a parent to establish a home and raise his or her child is protected by the Fourteenth Amendment to the United States Constitution. Bester v. Lake Cnty. Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005). However, the juvenile court must subordinate parents' interests to those of the child when evaluating a petition to terminate the parent-child relationship. Id. Parental rights may be terminated when parents are unable or unwilling to meet their parental responsibilities. In re K.S., 750 N.E.2d 832,

4

836 (Ind. Ct. App. 2001). The purpose of terminating parental rights is not to punish the parents, but to protect their children. Id. at 836.

To terminate Mother's parent-child relationship with J.J., DCS was required to prove the following four elements by clear and convincing evidence: (1) the child has been removed from the parent for at least six months under a dispositional decree; (2) there is a reasonable probability that whatever conditions precipitated the child's removal will not be remedied, or the continuation of the parent-child relationship poses a threat to the well-being of the child; (3) termination is in the best interests of the child; and (4) there is a satisfactory plan for the care and treatment of the child. Ind. Code § 31-35-2-4(b)(2); In re J.W., 779 N.E.2d 954, 959-60 (Ind. Ct. App. 2002), trans. denied. Mother only contends that there was insufficient evidence to support the second element. Here, the trial court found both that there is a reasonable probability that the conditions that resulted in J.J.'s removal will not be remedied and that the continuation of the parent-child relationship poses a threat to the well-being of J.J. Because the second element is written in the disjunctive, see Ind. Code § 31-35-2-4(b)(2)(B), however, we will affirm if the evidence supports either finding, see Castro v. State Office of Family & Children, 842 N.E.2d 367, 373 (Ind. Ct. App. 2006), trans. denied. Because we find that the evidence supports the trial court's conclusion that there was a reasonable probability that the conditions that resulted in J.J.'s removal will not be remedied, we need not discuss whether the evidence supports the finding that the continuation of the parent-child relationship poses a threat to J.J.

In determining whether there is a reasonable probability that the conditions that

5

resulted in the removal of the child will not be remedied, the trial court should judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. In re L.S., 717 N.E.2d 204, 209 (Ind. Ct. App. 1999), trans. denied, cert. denied, 534 U.S. 1161 (2002). Due to the permanency of termination, the trial court must evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future deprivation or neglect of the child. Id.

Mother first claims the trial court relied on erroneous findings of fact. She argues that the evidence does not support the findings that she failed to complete an intensive substance abuse program she was referred to, her house is unsafe, and she minimally communicates with J.J. This is essentially an attempt to re-argue her case and an invitation for us to re-weigh the evidence, which we cannot do on appeal. Even if there is evidence in the record supporting her contentions, there is also evidence supporting the trial court's findings, and thus those findings are not clearly erroneous. Also, Mother only points to three allegedly erroneous findings, and does not contend that the remaining findings are not supported by the evidence. The trial court made extensive findings of fact, addressing issues related to Mother's use of illegal substances and her treatment for substance abuse, her mental health history, and J.J.'s special needs. The findings not contested by Mother are sufficient to support the trial court's conclusions.

Mother argues that she had greatly improved her circumstances and was making progress at the time of the termination hearing. She cites to the cases of M.W. v. Ind. Dep't

of Child Servs., 942 N.E.2d 154 (Ind. Ct. App. 2011), trans. denied, and In re M.W., 943 N.E.2d 848 (Ind. Ct. App. 2011), trans. denied, in support of her position.[2] However, in M.W., DCS had agreed to give the mother a second chance but then failed to follow-through with its agreement. 942 N.E.2d at 161. Moreover, the mother had suffered a severe stroke and therefore "due to circumstances beyond her control . . . [was] unable to take advantage of that second chance." Id. at 160. And in In re M.W., the father had complied with almost all of the requirements of the amended case plan and was scheduled to be released from incarceration soon after the hearing date. 943 N.E.2d at 856. Here, even though Mother was dealing with a pending criminal matter, she was only incarcerated for three months and could have followed through with the case plan outside of that three month time period. And, yet, the trial court found that prior to and after her release from incarceration, she was inconsistent in taking all drug screens and in meeting with her advisor, had failed to follow through with home based counseling for her substance abuse issues, and was inconsistent in giving her mental health history and educating herself about J.J.'s deafness—having been observed to only know three signs as of the first date of the termination trial. In sum, while there was evidence of some short-term improvements, Mother was inconsistent in making those improvements and following through with meeting J.J.'s needs and completing her treatment. Cf. In re Ma.J., 972 N.E.2d 394, 403-04 (Ind. Ct. App. 2012) (reversing the termination of parental rights because the mother "had undisputedly made significant progress in each area of concern" and had only made one misstep during the eight months

_____

[2] Both of these cases dealt with the same child; the former was the mother's appeal and the latter the father's.

7

leading up to the termination hearing) (emphasis added). Moreover, it is within the trial court's discretion to determine whether a parent's habitual pattern of past conduct will eventually overcome the parent's present, short-term improvements. See In re W.B., 772 N.E.2d 522, 530 (Ind. Ct. App. 2002). We therefore hold that the trial court's finding that there was a reasonable probability that the conditions that led to J.J.'s removal would not be remedied is not clearly erroneous. There was sufficient evidence supporting the termination of Mother's parental rights with respect to J.J.

## II. Due Process

### A.     Standard of Review

When DCS seeks to terminate the parent-child relationship, it must do so in a manner consistent with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Hite v. Vanderburgh Cnty. Office of Family & Children, 845 N.E.2d 175, 181 (Ind. Ct. App. 2006). "[T]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.'" Id. (citation and quotation omitted). The nature of the process due in parental rights termination proceedings turns on a balancing of the factors set forth in Mathews v. Eldridge, 424 U.S. 319, 335 (1976): the private interests affected by the proceeding; the risk of error created by the chosen procedure; and the countervailing governmental interest supporting use of the challenged procedure. In re T.F., 743 N.E.2d 766, 770 (Ind. Ct. App. 2001), trans. denied. "Finally, we must keep in mind the general proposition that if the State imparts a due process right, then it must give that right." Id.

The general assembly has enacted an interlocking statutory scheme governing CHINS proceedings and the involuntary termination of parental rights proceedings. In re S.P.H., 806 N.E.2d 874, 878 (Ind. Ct. App. 2004). This statutory scheme is designed to protect the rights of parents in raising their children while allowing the State to effect its legitimate interest in protecting children from harm. Id. The CHINS and involuntary termination statutes are not independent from each other. Id. Rather, Indiana Code section 31-35-2-2 states that although termination proceedings are distinct from CHINS proceedings, an involuntary termination proceeding is "governed by the procedures prescribed by" the CHINS statutes contained in Indiana Code article 31-34. Id. Therefore, "procedural irregularities . . . in a CHINS proceeding may be of such import that they deprive a parent of procedural due process with respect to a potential subsequent termination of parental rights." In re N.E., 919 N.E.2d 102, 108 (Ind. 2010) (citation and quotation omitted).

### B.    Notice

Mother contends her due process rights were violated because she was not provided with adequate notice of what conduct would lead to termination of her parental rights. We first note that DCS argues that Mother has waived this issue because she did not raise it with the juvenile court. While we may consider a constitutional claim waived when it is raised for the first time on appeal, In re S.P.H., 806 N.E.2d at 877, waiver notwithstanding, we will address Mother's claims on the merits.[3]

---

[3] DCS also asserts that Mother failed to make a cogent argument with regard to this issue. However, we believe that Mother's discussion of the issue—albeit brief—was sufficient to allow us to address it.

Indiana Code section 31-34-15-1 requires that a case plan be prepared for each child in need of services who is under the supervision of the county. Indiana Code section 31-34-15-3 further provides that a copy of that case plan must be sent to the child's parent. The purpose of the plan is to give parents notice as to what conduct on their part could lead to the termination of their parental rights. See A.P. v. Porter Cnty. Office of Family & Children, 734 N.E.2d 1107, 1114 (Ind. Ct. App. 2000), trans. denied. Here, Mother does not complain that she was not provided with a case plan. Instead, she contends that she was not informed that her parental rights might be terminated if she did not attend J.J.'s doctor appointments, nor was she informed that her parental rights could be terminated so that J.J. would become eligible for cochlear implants.

We first note that the issues Mother claims she was not given notice of were not the only bases for the trial court's conclusions. In particular, the cochlear implant issue appears to have factored into the trial court's finding that the parent-child relationship would harm the well-being of J.J., but, as discussed above, DCS was not required to prove this because it provided sufficient evidence that the conditions that led to the removal of J.J. would not be remedied. More importantly, Mother was provided with a detailed case plan, which required her, in part, to keep all appointments, maintain suitable housing, and complete all treatment recommendations developed as a result of her substance abuse assessment. The trial court found that she violated several of these requirements. Thus, Mother was provided with adequate notice and there was no constitutional violation. See, e.g., McBride v. Monroe Cnty. Office of Family & Children, 798 N.E.2d 185, 195-96 (Ind. Ct. App. 2003) (finding

10

that the failure to complete the plan within the statutory sixty-day timeframe and complaints regarding the plan's contents did not rise to the level of a constitutional violation); see also A.P., 734 N.E.2d at 1117-18 (stating that any one of seven procedural irregularities—one of which was the failure to provide the parents with at least some, and possibly all, of the child's case plans—may not have risen to the level of a violation of due process but the multiplicity of irregularities did).

Mother cites to the case of In re I.A., 934 N.E.2d 1127 (Ind. 2010), for support for her argument. However, in that case, no case plan for reunification had ever been developed. Id. at 1135. Moreover, our supreme court did not address the issue of whether this constituted a constitutional violation, but rather found that DCS had not proven by clear and convincing evidence either that there was a reasonable probability that the reasons for the child's removal would not be remedied or that the continuation of the parent-child relationship would pose a threat to the well-being of the child. See id. at 1136. In contrast, here, a detailed case plan had been developed and, over the course of more than a year, Mother failed to abide by several of the requirements set forth in that plan. The notice Mother was provided did not deprive her of her due process rights.

## Conclusion

There was sufficient evidence supporting the involuntary termination of Mother's parental rights with regard to J.J. In addition, the notice with which Mother was provided did not deny her due process. We therefore affirm.

Affirmed.

11

FRIEDLANDER, J., and CRONE, J., concur.